```
 1                   IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2
     - - - - - - - - - - - - - - - x
 3   FEDERAL TRADE COMMISSION,
                                      CA No:  1:20-mc-00111-CRC
 4                 Plaintiff,
                                      Washington, D.C.
 5   vs.                              Tuesday, December 22, 2020
                                      2:02 p.m.
 6
     STEPHEN BANNON,
 7
                   Defendant.
 8   - - - - - - - - - - - - - - - x

 9   _____

10                  TRANSCRIPT OF SHOW CAUSE HEARING
          HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                  UNITED STATES DISTRICT JUDGE
     _____
     APPEARANCES:
12   For the Plaintiff:        BRIAN CLIFTON BERGGREN, ESQ.
                               LINDA HOLLERAN KOPP, ESQ.
13                             MICHELE ARINGTON, ESQ.
                               FEDERAL TRADE COMMISSION
14                             Bureau of Consumer Protection
                               600 Pennsylvania Avenue, NW
15                             Ste Mail Stop CC-8232
                               Washington, DC 20580
16                             202-326-3232
                               bberggren@ftc.gov
17
     For the Defendant:        ALLISON L. MCGUIRE, ESQ.
18                             QUINN EMANUEL URQUHART & SULLIVAN LLP
                               1300 I Street, NW, Suite 900
19                             Washington, DC 20005
                               202-538-8272
20                             allisonmcguire@quinnemanuel.com

21   Court Reporter:                   Lisa A. Moreira, RDR, CRR
                                       Official Court Reporter
22                                     U.S. Courthouse, Room 6718
                                       333 Constitution Avenue, NW
23                                     Washington, DC  20001
                                       202-354-3187
24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription
```

1                     P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  Your Honor, we're on the

3     record for Miscellaneous Case 20-111, *Federal Trade*

4     *Commission vs. Stephen K. Bannon*.

5              Counsel, please identify yourselves for the

6     record.

7              MR. BERGGREN:  Brian Berggren on behalf of the

8     Federal Trade Commission.

9              MS. KOPP:  Linda Kopp on behalf of the Federal

10    Trade Commission.

11             MS. ARINGTON:  Michele Arington on behalf of the

12    Federal Trade Commission.

13             MS. McGUIRE:  Allison McGuire from Quinn Emanuel

14    on behalf of respondent, Stephen K. Bannon.

15             THE COURT:  Okay.  Good afternoon, everyone.

16    Thanks for joining.  Happy holidays.

17             Just to review the bidding here for the record.

18    On November 9, 2020, the FTC filed a petition for an order

19    enforcing a civil investigative demand that it issued back

20    in September of 2019 to Mr. Stephen Bannon.  On November

21    18th the Court issued a notice to show cause to Mr. Bannon

22    why the petition should not be granted and set a December

23    8th hearing date.

24             On November 24th Mr. Burck, on Mr. Bannon's

25    behalf, requested an extension of the December 8th hearing

1   date on the ground that Mr. Bannon needed additional time to

2   retain substitute counsel.  The Court granted that motion

3   and set the hearing for today's date.  Notwithstanding

4   Mr. Burck's extension motion, I see that Quinn Emanuel is

5   still appearing on Mr. Bannon's behalf, although Mr. Burck

6   has indicated to the Court that for some unstated reason he

7   is unavailable to argue against the petition.

8        So here we are.  It's the commission's motion to

9   enforce so whoever wants to speak on behalf of the

10  commission, feel free.  I've read your papers, but feel free

11  to make any points that you would care to.

12       MR. BERGGREN:  Good afternoon, Your Honor; Brian

13  Berggren on behalf of the Federal Trade Commission, and with

14  me today are my colleagues from the commission, Michele

15  Arington and Linda Kopp.

16       And so as Your Honor is well aware, this matter

17  involves the properly issued and authorized civil

18  investigative demand that seeks oral testimony from

19  Mr. Bannon.  After counsel negotiated a mutually agreeable

20  appearance date during a global pandemic, Mr. Bannon

21  now refuses to appear and sit for the investigational

22  hearing because of potential Fifth Amendment concerns.  But

23  as our opening memorandum laid out, that is not a basis to

24  refuse to appear for an investigational hearing, nor could

25  Mr. Bannon continue to ignore duly authorized agency

1    process, particularly when Mr. Bannon did not file a

2    petition to quash before the commission, and Mr. Bannon did

3    not otherwise object before the commission.

4              THE COURT:  All right.

5              MR. BERGGREN:  Accordingly, the Court should

6    enforce the CID and order Mr. Bannon to appear for an

7    investigational hearing for three reasons.

8              The first is that the CID is within the

9    commission's authority and was properly issued according to

10   all administrative prerequisites.

11             The second is that the CID seeks testimony from

12   Mr. Bannon that is reasonably relevant to the commission's

13   investigation.

14             And the third reason is that compliance with the

15   CID is not unduly burdensome.

16             THE COURT:  So, Counsel, I appreciate that it is

17   common practice to force a subject of investigation or a

18   witness to appear and assert the Fifth question by question,

19   but certainly the commission has the authority to accept a

20   blanket assertion and not force a witness to appear.  Is

21   that fair?

22             MR. BERGGREN:  I believe the commission would have

23   the authority to accept a blanket assertion, but in this

24   particular case we believe that Mr. Bannon should have to

25   make this assertion on a question-by-question basis.

1          THE COURT:  Why?

2          MR. BERGGREN:  The Office of -- well, two reasons,

3     Your Honor.  One, it's important that Mr. Bannon answer each

4     and every question that the commission has and asserts the

5     Fifth because there are potential adverse inferences that

6     can be drawn from those assertions as well as there may be

7     foundational questions that Mr. Bannon can answer without

8     actually, you know, incriminating himself.

9          The second reason, it's a reason for both the

10    commission and the district court record on this issue

11    because there needs to be an assertion on a question-by-

12    question basis in case the commission wants to contest

13    Mr. Bannon's assertion to a particular question after the

14    fact.

15         THE COURT:  When did your investigation begin?

16         MR. BERGGREN:  The investigation or the CID that

17    was --

18         THE COURT:  I know when the CID was first issued,

19    but when did the investigation begin?  Did it begin pursuant

20    to a commission order of some sort?

21         MR. BERGGREN:  The CID was issued pursuant to an

22    agency resolution, which is detailed in the commission's

23    memorandum.  It's an agency resolution that allows the

24    commission to use compulsory process and to investigate

25    unfair or deceptive trade practices with respect to consumer

1    privacy or data security issues.

2              THE COURT:  And when was that resolution?  In mid-

3    2019 or before?

4              MR. BERGGREN:  If you'll bear with me, Your Honor,

5    I can get you the exact date.

6              So that was actually issued on March 14, 2019.

7              THE COURT:  Okay.

8              MR. BERGGREN:  And that's at ECF 1-2, Page 14.

9              THE COURT:  Thank you.

10             MR. BERGGREN:  And so, Your Honor, I'd like to

11   address some of Mr. Bannon's arguments that were raised in

12   the opposition and to put a finer point on some of these

13   items, particularly as it relates to Mr. Bannon's supposedly

14   undue burden.

15             So the first argument I'd like to address is

16   Mr. Bannon's assertion that there is somehow a risk to his

17   right to a fair trial in his criminal action by simply

18   appearing at an investigational hearing.  That's just simply

19   not the case, Your Honor.  Mr. Bannon does not dispute that

20   the proper way to invoke the Fifth Amendment is on a

21   question-by-question basis.  He does not dispute that he

22   must appear at an investigational hearing.

23             And at the end of the day, the commission is not

24   actually contesting whether Mr. Bannon has the right or not

25   to assert the Fifth Amendment.  We're not trying to preclude

1    him here.  Mr. Bannon is certainly able to assert the Fifth

2    where he believes it's appropriate, and that mere assertion

3    should protect his right to a fair trial in this criminal

4    action.

5            There's nothing --

6            THE COURT:  Well, his -- I'm sorry to interrupt,

7    but the argument is, it seems to be, that if he asserts the

8    Fifth here, that the prosecutors in the Southern District

9    will attempt to introduce that assertion under 404(b)

10   somehow; and, therefore, his fair trial right in New York

11   will be jeopardized unnecessarily given that the commission

12   can simply wait six months presuming optimistically,

13   probably, that he will go to trial in May of 2021, and that

14   in the balance his trial rights should outweigh the FTC's

15   interest in proceeding within the next six months.

16           Not to put words in Ms. McGuire's mouth, but

17   that's what I understand the core of the argument to be.

18           MR. BERGGREN:  So, Your Honor, I'll take that in

19   two parts.

20           The first is the -- that prosecutors are somehow

21   allowed to use the assertion of the Fifth Amendment as --

22   under 404(b) as unindicted misconduct.  I don't think that's

23   the case.  The cases that were cited in Bannon's opposition

24   were talking about when you have an actual misconduct, a

25   finding on the record either through a government action or

1     something else, that can be used by prosecutors if they

2     file the particular requirements of 404(b).  I am sure

3     Mr. Bannon's criminal counsel will fight tooth and nail to

4     prevent that from coming in, but I don't think the mere

5     assertion of a Fifth Amendment can be used to draw an

6     adverse inference in a criminal trial under 404(b).

7             The second argument, which has to do with this

8     notion of a delay of six months in that it would somehow be

9     in Mr. Bannon's interest and that it would protect his

10    rights at trial and there's really no prejudice to the

11    commission, that ignores two things that the commission set

12    forth in its opening memorandum.

13            The first is that there is -- you know, the

14    commission has a strong interest in timely enforcing its own

15    laws and in completing this investigation.  The commission

16    can't complete this investigation without the testimony from

17    Mr. Bannon.  That's in the declaration of Ms. Kopp as well

18    as the petition.

19            The second reason is that there's an interest

20    in -- a public interest in seeing the enforcement of the

21    FTC's law.  But in the commission's opening memorandum,

22    there were two decisions that were cited.  It's the *Parade*

23    *of Toys* decision and then the *American Tax Relief* decisions

24    where it was dealing with this precise issue, this precise

25    balancing test when you have a defendant that is raising a

1    potential Fifth Amendment concern and raising a stay.  In

2    that case the Court looked at it and determined that the

3    FTC's interest in timely enforcing its own laws, that

4    outweighed the defendant's interest in being able to assert

5    his Fifth Amendment rights and cautioning against the stay.

6         But there's, you know, a practical point we want

7    to keep in mind here, Your Honor, which is that the Southern

8    District of New York is closed down currently for jury

9    trials.  It's been closed down since December 1st.  It will

10   be closed down until January 15th.  There's no guarantee

11   that Mr. Bannon's criminal trial occurs in May 2021, and

12   there's no guarantee that Mr. Bannon can appear after that

13   criminal trial because that may be an option that his

14   criminal counsel determines that is inappropriate.  And his

15   own opposition brief concedes the sentencing judge can

16   consider unindicted criminal conduct; so it can look at and

17   use that same type of 404(b) evidence which they claim is

18   prejudicial now at his sentencing.  And then there's also no

19   guarantee at the end of the day that Mr. Bannon actually

20   answers the question and doesn't invoke the Fifth Amendment.

21        THE COURT:  Okay.  Very well.  Any other points?

22        MR. BERGGREN:  The only other point I'd like to

23   make, Your Honor, is, you know, to address Mr. Bannon's

24   claims about that there is some improper purpose or

25   nefarious motive with respect to the commission's

1    investigation.  As Your Honor is well aware, there's not a

2    single shred of evidence in the record that the commission's

3    investigation is motivated by anything other than a lawful

4    and proper purpose, nor does the investigation have to do

5    with Mr. Bannon's supposed notoriety.  It's, at the end of

6    the day, about getting to the bottom of Cambridge

7    Analytica's deceptive conduct.  It's about learning where

8    this data has been transferred, who it's been shared with,

9    and whether it still exists.

10          Mr. Bannon, at the end of the day -- he's an

11   officer of the company during the time in which this conduct

12   took place.  The commission is entitled to assess whether he

13   can be held individually liable and whether he has any

14   knowledge about Cambridge Analytica's data at the end of the

15   day.

16          And that leads me to my final point, which is to

17   address Mr. Bannon's argument that this oral testimony is

18   somehow duplicative of the information that is sought by or

19   provided by written discovery and in the document responses,

20   but, you know, there's a couple of things to keep in mind.

21          The first is that Mr. Bannon waived this argument.

22   It should have been raised in a petition to quash.  It

23   wasn't.  He can't raise it now.

24          But even if Your Honor entertains it, it fails for

25   a couple of reasons.

1    The first is, you know, courts have recognized

2    that there's no general prohibition to seeking oral

3    testimony on topics that concern information already

4    received via other discovery devices.  That's Your Honor's

5    opinion in *Landis vs. Armstrong*.

6    The second is there's a sworn declaration from

7    commission staff saying that additional information is

8    needed; that it's relevant for Mr. Bannon, about his role at

9    the company, his knowledge.  Under, you know, Mr. Bannon's

10   own authority in *Bisaro*, the commission's assertions are

11   entitled to deference.

12   And the third thing at the end of the day is to,

13   you know, look at the actual written discovery responses,

14   which Mr. Bannon did not attach to his opposition; and it's

15   clear why, because they're insufficient.  They're larded up

16   with four pages of general objections, some specific

17   objections.  They claim unspecified documents provide the

18   answers to these interrogatories, and then the responses are

19   frankly narrow.  They're limited to personal knowledge

20   during a very specific time period.

21   This is precisely why we need an investigational

22   hearing.  You need to test the foundation.  You need to test

23   the accuracy.  You need to test the veracity.  You need to,

24   you know, test Mr. Bannon's recollection.  These are all

25   reasons why at the end of the day there's no undue burden on

1    Mr. Bannon and why the commission respectfully requests that

2    Your Honor direct Mr. Bannon to appear for an

3    investigational hearing.

4                THE COURT:  Okay.  Very well.

5                Ms. McGuire, it's a pleasure to meet you.

6    Welcome.

7                MS. McGUIRE:  Thank you, Your Honor.

8                THE COURT:  Mr. Burck was not able to fit us into

9    his busy schedule this afternoon?

10               MS. McGUIRE:  Unfortunately he had a conflict,

11   Your Honor.

12               THE COURT:  Okay.  All right.  Please proceed.

13               MS. McGUIRE:  Thank you.

14               Your Honor, your order asked us to show good cause

15   for why we have not previously raised the arguments and

16   objections that are at issue today, and it's really very

17   simple.  There has been a drastic change in circumstances

18   that were completely unforeseeable.

19               We're living in a very different world than we

20   were in November 2019 when Mr. Bannon was served with the

21   CID.  The global pandemic didn't exist when the FTC served

22   Mr. Bannon, and separately and importantly, Mr. Bannon

23   hadn't been arrested and indicted for alleged

24   misrepresentations in November 2019.  These two factors

25   weren't in play at the time, and they're critically

1      important here.

2              And the FTC has accused us of trying to stall this

3      proceeding, but that's not at all what's happening.  We want

4      the judge's involvement.  We want Your Honor's neutral

5      oversight of this matter, and as we've told the commission,

6      if Your Honor decides that Mr. Bannon needs to appear at

7      this moment and provide testimony, he certainly will comply

8      with the Court's order.

9              But there is a reason why these administrative

10     subpoenas aren't self-enforcing.  There's a reason the laws

11     make the commission go to the Court and seek an order

12     getting compliance.  We have built-in checks so that no arm

13     of the government can exercise this unfettered investigative

14     power.

15             And that's why we're here, Your Honor.  We want

16     the Court's involvement in this.  We want the Court to

17     evaluate the commission's purpose and see whether the Court

18     shares our concerns that there may be political motives at

19     play, and we also want the Court to evaluate the very real

20     harm that Mr. Bannon faces to his right to a fair trial.

21             THE COURT:  All right.  So you've mentioned two

22     things.  You've mentioned the pandemic, and you've mentioned

23     the criminal proceedings.

24             As to the pandemic, I assume that Mr. Bannon will

25     have the option, if the Court enforces the CID, of appearing

1   remotely.  Is that fair?

2          MS. McGUIRE:  Yes, Your Honor; that's correct.

3          THE COURT:  And if he were to choose to appear in

4   person, certainly the FTC would accommodate him in any way

5   in terms of safety and health protocols.  The Court has

6   permitted a number of in-person depositions in other civil

7   litigation matters where we've managed to do that in a way

8   that protects everyone, if Mr. Bannon were to choose that

9   route.

10          Why don't we talk about the criminal case.  You've

11   mentioned the sort of -- FTC's failure to accept a blanket

12   assertion, and you've mentioned this prospect of 404(b)

13   evidence being introduced in New York.  Why don't you talk

14   about that.

15          MS. McGUIRE:  Thank you, Your Honor, and you

16   hit the nail on the head when you were speaking with

17   Mr. Berggren earlier.  This is sort of a twofold issue, and

18   Mr. Bannon is being forced in a situation where no matter

19   what he chooses he'll risk prejudice to his criminal trial.

20          On the one hand, he can choose to invoke his Fifth

21   Amendment right to protect himself against the risk that DOJ

22   could seek over his objection to introduce this evidence as

23   404(b).

24          THE COURT:  And "this evidence" is what?  His

25   assertion, or the -- if the FTC were to issue an order prior

1    to the criminal trial finding him liable for a violation of

2    the FTC Act, that that conduct could be introduced as

3    404(b), or the assertion itself?  I was a little confused by

4    the motion.

5            MS. McGUIRE:  Your Honor, the conduct at issue

6    here.

7            THE COURT:  Okay.

8            MS. McGUIRE:  And especially because there's a

9    substantial similarity between the alleged

10   misrepresentations.  We're dealing with alleged

11   misrepresentations on both sides.

12           And I think that the other part of this that's so

13   critical is that, as Mr. Berggren already said, the FTC can

14   admit adverse inferences again Mr. Bannon in this case.

15           There's prejudice on both sides of this.  So if he

16   does appear and does invoke, the FTC can use his invocations

17   against him in this case to seek civil penalties or, worse,

18   to draw false adverse inferences that Mr. Bannon has been

19   dishonest, that he's lied, that he was complicit in the

20   alleged misrepresentations here, which Mr. Bannon adamantly

21   denies.

22           And the commission's brief tries to splice it and

23   say, "Well, there are different time frames and different

24   companies and different statements," but the core issue is

25   the same.  Forcing Mr. Bannon to appear pretrial and invoke

1      when the FTC says it has already determined that

2      misrepresentations have occurred covers Mr. Bannon in this

3      predetermined guilt, and the best we can hope for is that a

4      jury will be able to parse out the commission's alleged

5      misrepresentations and inferences about Mr. Bannon's

6      invocation from the alleged misrepresentations at issue in

7      the criminal case.

8              THE COURT:  Well, Counsel, isn't what you're

9      really seeking a stay of the civil proceedings?

10             MS. McGUIRE:  Yes, Your Honor.

11             THE COURT:  And I've had these cases before, and

12     the standards for a stay are multifactored.  And, you know,

13     I think there are some considerations that have not been

14     briefed here, and the chief consideration is the overlap of

15     subject matter between the civil litigation and the criminal

16     case.  And here, while you're correct that, you know,

17     ultimately the allegation is fraud or fraudulent

18     misrepresentations, the subject matters are completely

19     different, aren't they?

20             MS. McGUIRE:  Yes, Your Honor; that's right.  But

21     the concern is still the same when the conduct at issue is

22     substantially similar and, as Your Honor correctly stated,

23     deals with alleged fraudulent misrepresentations.

24             THE COURT:  Okay.  Anything else?

25             MS. McGUIRE:  No, Your Honor.  We would simply

1    request that the Court allow Mr. Bannon to preserve his

2    innocence; that he deserves a fair trial untainted by

3    inferences of being forced to invoke his Fifth Amendment

4    rights.

5            THE COURT:  Okay.  I'll give you the last word,

6    Mr. Berggren.

7            MR. BERGGREN:  Just a couple of points, Your

8    Honor.

9            You know, the first is that, you know, I think

10   counsel confirmed that the mere assertion of the Fifth

11   Amendment is not 404(b) evidence.  It's the conduct at the

12   end of the day.  Mr. Bannon's not going to be prejudiced by

13   invoking the Fifth Amendment because there's going to be no

14   issues with him admitting to certain conduct.

15           With respect to the issue of prejudice, look, this

16   is the first time that Mr. Bannon's counsel is raising the

17   issue of prejudice.  They've never once said, "He'll be

18   prejudiced by asserting his Fifth Amendment."  That never

19   came out in any meet-and-confer letters.  It didn't even

20   come out in the opposition.  The first time it's coming out

21   is in the hearing.  And as Your Honor has recognized, when

22   you're requesting a stay, something that they did not even,

23   you know, request formally and address any of the factors,

24   that, you know, the key issues overlap at the end of the

25   day.

1          And, frankly, there's no overlap between this case

2     and the criminal indictment.  It's different defendants,

3     kind of different victims at the end of the day.  It's a

4     different time period.  The only locus, you know, similarity

5     is that there was a misrepresentation, and even that

6     misrepresentation is directed at two separate categories of

7     individuals.

8          So under these circumstances, we would submit,

9     Your Honor, that, you know, it's not an undue burden for

10    Mr. Bannon to appear for an investigational hearing.  It's

11    not an undue burden for him to assert the Fifth on any

12    questions; he's not going to be prejudiced in the criminal

13    trial.  And, therefore, we ask -- respectfully request Your

14    Honor enter an order directing Mr. Bannon to comply with the

15    CID and sit for an investigational hearing either remotely

16    or in person, if he chooses.

17         THE COURT:  Okay.  So the -- you call it an

18    investigational hearing.  I'll call it a deposition.  That's

19    the only thing the commission's seeking at this point; is

20    that correct?

21         MR. BERGGREN:  That's correct, Your Honor.

22         THE COURT:  Okay.

23         All right.  Ms. McGuire, I want to make clear that

24    no one is faulting Mr. Bannon for seeking the Court's

25    intervention, which is obviously his right to do, but having

1    considered all of the arguments, the Court will enforce the

2    CID to the extent that it seeks to compel Mr. Bannon's

3    deposition testimony, which, as counsel has just confirmed,

4    is all the commission is seeking at this point.

5            First, the issuance of the CID was within the

6    FTC's statutory authority, and it was duly served on

7    Mr. Bannon.

8            Second, Mr. Bannon has failed to demonstrate that

9    delaying his testimony until after his criminal trial is

10   warranted under the circumstances.  As I indicated, I think

11   what you're really seeking is a stay of the parallel civil

12   proceedings, which is a fairly extraordinary remedy,

13   particularly where there is no substantive overlap between

14   the civil and criminal matters, as is the case here.

15           In any case, the FTC's investigation has been

16   ongoing since, I believe Mr. Berggren indicated, March of

17   2019.  Delaying that deposition, Mr. Bannon's testimony,

18   indefinitely or even six months under the optimistic

19   assumption that he will be tried in May will prevent the

20   commission from completing its investigation, which is not

21   in the public interest.

22           Third, the CID is not unduly burdensome.

23           As for the potential of self-incrimination,

24   Mr. Bannon has the right to assert his Fifth Amendment in

25   response to any question if he believes he has a good faith

1   basis for doing so, and, as Mr. Burck surely knows,

2   requiring a deponent to assert the Fifth on a question-by-

3   question basis is a common practice in government

4   investigations.  I'm also not convinced that there would be

5   a basis to introduce his invocation of the Fifth under Rule

6   404(b), but I am fully confident that Judge Torres will see

7   to it that Mr. Bannon receives a fair trial up in New York.

8            Finally, to the extent that the argument has not

9   been waived, the CID is not necessarily duplicative of

10  Mr. Bannon's interrogatory answers.  And even if it was,

11  that is not a basis to quash the CID.  As Mr. Berggren

12  mentioned, plaintiffs are entitled to obtain relevant

13  evidence through multiple discovery mechanisms, and the

14  plaintiff's entitled to test a deponent's interrogatory

15  answers via cross-examination and follow-up questions.

16           So for those reasons, the Court will grant the

17  commission's petition to enforce the CID.

18           Now, hopefully you folks won't need my help in

19  coming up with a convenient date soon after the holidays to

20  schedule this.  I will leave it to you all to do that, but

21  in the event that you need my help, you know where to find

22  my.  All right?

23           Is there anything else?

24           MR. BERGGREN:  Thank you, Your Honor.

25           MS. McGUIRE:  Thank you, Your Honor.

1      MS. KOPP:  Thank you.

2      THE COURT:  Okay.  Well-argued, everyone.  Happy

3  holidays, and hopefully this will put a close to this matter

4  before this Court, and good luck going forward, all right?

5      MS. KOPP:  Thank you.

6      THE COURT:  Thank you.

7      MR. BERGGREN:  Thank you, Your Honor.

8          (Whereupon the hearing was

9           concluded at 2:29 p.m.)

10

11      **CERTIFICATE OF OFFICIAL COURT REPORTER**

12

13          I, LISA A. MOREIRA, RDR, CRR, do hereby

14  certify that the above and foregoing constitutes a true and

15  accurate transcript of my stenographic notes and is a full,

16  true and complete transcript of the proceedings to the best

17  of my ability.

18      **NOTE:**  This hearing was held during the COVID-19

19  pandemic stay-at-home restrictions and is subject to the

20  technological limitations of court reporting remotely.

21          Dated this 21st day of January, 2021.

22

23                  /s/Lisa A. Moreira, RDR, CRR
                    Official Court Reporter
24                  United States Courthouse
                    Room 6718
25                  333 Constitution Avenue, NW
                    Washington, DC 20001